# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Urbano Nario-Marquez,<br><br>  Defendant. | CR 06-1498-TUC-FRZ (JCG)<br><br>REPORT AND RECOMMENDATION |

On May 21, 2007, Defendant Nario-Marquez filed a Motion to Suppress. (Doc. No. 30.) On June 22, 2007, the government filed a Response. (Doc. No. 35.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral on September 25, 2006, pursuant to LRCrim 5.1.

This matter was set for evidentiary hearing and evidence was heard on June 29, 2007. Defendant Nario-Marquez, who remains in custody at this time, was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion to Suppress.

## FACTUAL FINDINGS

The facts in this case are straightforward and relatively undisputed.

1	Sergeant Todd Berson, an Tucson Police Department officer assigned to the fugitive
2	task force, testified that he received a call from Sergeant Leonardi in the early morning hours
3	of September 1, 2005, well before the start of his 6:00 a.m. shift.  Sergeant Leonardi
4	informed Sergeant Berson that TPD had received an anonymous tip through the 88-CRIME
5	hotline that a wanted person with an outstanding homicide warrant was at 4705 S. Campbell,
6	Apt. 305.  The anonymous caller told police that the suspect was driving a burgundy Chrysler
7	vehicle, which he had backed into a parking space in the apartment complex parking lot.

8	Sergeant Berson responded to the apartment complex and observed a gray Chrysler
9	vehicle backed into a parking space in the complex lot.  As it was early in the morning and
10	the sun was just beginning to rise, Sergeant Berson believed that the anonymous caller,
11	calling at night, could have been mistaken about the vehicle's color.  In addition, Sergeant
12	Berson testified that, in his experience, calls to the 88-CRIME hotline are not usually 100%
13	accurate.  There were no other vehicles in the area that were close to the description provided
14	by the caller.

15	Sergeant Berson pulled into the parking lot of an office complex across the street from
16	the apartment complex in order to observe the Chrysler.  He was met there by Sergeant
17	Leonardi, who provided him with a photo of the wanted individual, as well as a physical
18	description from the outstanding homicide warrant.  While Sergeant Berson was watching
19	the apartment complex parking lot, he observed Defendant leave the apartment complex and
20	walk toward the Chrysler.  Although Sergeant Berson, from his position across the street,
21	could not positively identify Defendant as the subject of the warrant, he testified that
22	Defendant's height, build, gender and ethnicity resembled the wanted person.  When
23	Defendant entered the Chrysler and drove off the lot, Sergeant Berson followed him in an
24	unmarked police car and requested uniformed officers to respond.

25	While Sergeant Berson was following Defendant, he observed Defendant's vehicle
26	weaving both in its lane and over the lane divider.  Defendant's driving was, in Sergeant
27	Berson's opinion, characteristic of someone who is looking for a place to pull over in order
28	to exit the vehicle and flee on foot.  In addition, Sergeant Berson believed that Defendant's

1 driving was a violation of A.R.S. § 28-729(1), which provides that "a person shall drive a
2 vehicle as nearly as practicable entirely within a single lane."

3     Defendant turned off of Campbell Avenue onto Calle Grandiosa, a residential street,
4 where he was stopped by uniformed police officers in marked patrol cars. When Sergeant
5 Berson made contact with Defendant following the stop, he observed that Defendant looked
6 like the wanted person referenced in the tip, but was not him.

## ANALYSIS

8     Defendant argues that officers unlawfully stopped his vehicle, and therefore all
9 evidence resulting from the stop must be suppressed.

10     The Fourth Amendment's prohibition against unreasonable searches and seizures
11 applies to investigatory traffic stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To
12 justify an investigative stop, a police officer must have reasonable suspicion that a suspect
13 is involved in criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th
14 Cir.2000). Reasonable suspicion is formed by "specific articulable facts which, together with
15 objective and reasonable inferences, form the basis for suspecting that the particular person
16 detained is engaged in criminal activity." *Lopez-Soto*, 205 F.3d at 1105 (internal quotation
17 marks and citations omitted). An officer's inferences must "be grounded in objective facts
18 and be capable of rational explanation." *Id*. (internal quotation marks and citations omitted).
19 The Court must consider the "totality of the circumstances" to determine whether the officer
20 had a "particularized and objective basis" for suspecting criminal activity. *Arvizu*, 534 U.S.
21 at 273 (internal quotation marks and citations omitted); *see also United States v. Diaz-Juarez*,
22 299 F.3d 1138, 1141-42 (9th Cir. 2002). Officers are encouraged to draw upon their own
23 specialized training and experience in assessing the "totality of the circumstances." *Arvizu*,
24 534 U.S. at 273-74.

25     As a general matter, the decision to stop an automobile is reasonable where the police
26 have probable cause to believe that a traffic violation has occurred. *See Whren v. United
27 States*, 517 U.S. 806, 819 (1996). In the present case, Sergeant Berson testified that he
28 observed Defendant's vehicle weaving in and out of its lane. He also testified that he

believed he had a valid basis for the stop, in addition to other bases, because he believed that a violation of A.R.S. § 28-729(1) had occurred. Officer Berson's testimony demonstrated that the decision to stop Defendant's vehicle was grounded in specific, objective observations which support a reasonable inference that the vehicle was being driven in violation of Arizona traffic law. Defendant conceded during oral argument that he had no evidence to refute the government's claim that Defendant committed a traffic violation; he also conceded that a traffic violation was a reasonable basis for an investigatory stop.[1]

In addition, investigatory stops are lawful where police have a reasonable suspicion that a person they encounter is wanted in connection with a completed felony. *See United States v. Hensley*, 469 U.S. 221, 229 (1985). The details of the 88-CRIME tip combined with Sergeant Berson's observations of Defendant formed a basis for suspecting that Defendant was wanted for a homicide. The tip gave specific information about Defendant, including that he was driving a Chrysler that had been backed into a parking space at an apartment complex located at 4705 S. Campbell. Officer Berson testified that he observed a Chrysler backed into a parking space at the apartment complex. Although the Chrysler that Sergeant Berson observed was a different color than the Chrysler mentioned in the tip, that discrepancy could be explained, as Sergeant Berson believed that it was, by the fact that the tip was received before daylight hours, and thus the anonymous caller may have been unable to discern the true color of the vehicle. In addition, Sergeant Berson had been provided with a description of the suspect and a photograph; when Sergeant Berson observed Defendant leaving the apartment complex he concluded that Defendant's physical characteristics, specifically his height, weight and ethnicity, matched those of the suspect. Finally, Sergeant Berson testified that he observed Defendant driving erratically in a manner that, in Sergeant Berson's experience, was characteristic of a driver who is attempting to evade his pursuer.

---

[1] Defendant argued that to the extent TPD claims it stopped Defendant for committing a traffic violation, the claim is pretextual; Defendant was actually stopped so that TPD could pursue its investigatory agenda. The government need not demonstrate the actual motivation of the officers conducting the stop, however, only whether the officers had a reasonable basis for the stop. *See Whren*, 517 U.S. at 811-812. The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *Id.* at 813.

1  Based on the totality of the circumstances, the Court concludes that the officers had a
2  particularized and objective basis for the stop.

### RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant Nario-Marquez's Motion to Suppress evidence (Doc. No. 30). The parties have ten (10) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR-06-1498-TUC-FRZ.**

DATED this 29th day of June, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge